JOSEPH H. HUNT
Assistant Attorney General
JAMES J. GILLIGAN
Special Litigation Counsel
Federal Programs Branch
JACQUELINE COLEMAN SNEAD
Assistant Branch Director,
KERI L. BERMAN
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel: (202) 514-3358
Fax: (202) 616-8470
Email: james.gilligan@usdoj.gov

## UNITED STATES DISTRICT COURT FOR

## THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES POSTAL SERVICE, | Case No.: |
| Plaintiff, | |
| v. | **COMPLAINT** |
| AMERICAN POSTAL WORKERS UNION, AFL-CIO, | |
| Defendant. | |

## <u>COMPLAINT</u>

1.  This is an action brought pursuant to Section 1208(b) of the Postal Reorganization Act,

39 U.S.C. § 101, et seq., by the United States Postal Service, ("USPS"), against the American

Postal Workers Union, AFL-CIO, ("APWU"), to vacate an arbitration award requiring the USPS

to rescind changes made to leave documentation in furtherance of measures implemented to
address long-standing practices for leave-without-pay, ("LWOP"), authorization that were
contrary to the policies set forth in the Hatch Act, 5 U.S.C. § 7321, et seq.  Plaintiff seeks the
vacatur of the arbitration award as against public policy for the reasons set forth herein below.

## JURISDICTION AND VENUE

2.   This Court has jurisdiction pursuant to 39 U.S.C. §§ 409 and 1208, and pursuant to 28
U.S.C. §§ 1331, 1339, 2201, and 2202.

3.   Venue is proper pursuant to 39 U.S.C. § 1208 and 28 U.S.C. § 1391.

## PARTIES

4.   Plaintiff USPS is an independent establishment of the Executive Branch of the United
States Government. *See* 39 U.S.C. § 201.  USPS Headquarters are located at 475 L'Enfant Plaza,
SW, Washington, DC 20260.

5.   Defendant, the APWU, is a labor organization with its headquarters at 1300 L Street,
NW, Washington, DC 20005.

## LEGAL BACKGROUND

6.   At all material times, Plaintiff USPS and Defendant APWU have been parties to
collective bargaining agreements providing the terms and conditions of employment for the
bargaining unit employees represented by Defendant APWU.  Bargaining unit employees work
at various postal facilities throughout the United States.  The dispute, which is the subject of this
complaint, arose under the collective bargaining agreement between the Postal Service and the
APWU in effect May 21, 2015 to present, ("the CBA").

7.   The CBA contains a comprehensive grievance-arbitration procedure for the resolution of
any "dispute, difference, disagreement or complaint between the parties related to wages, hours,

and conditions of employment." CBA at Article 15.1. The procedure includes a multi-step

grievance process culminating in final and binding arbitration before a neutral arbitrator.

8. Pursuant to 39 U.S.C § 1208(b), "[s]uits for violation of contracts between the Postal

Service and a labor organization representing Postal Service employees…may be brought in any

district court of the United States having jurisdiction of the parties, without respect to the amount

in controversy."

9. Although the parties agreed through the CBA to be bound by the decisions of the

Arbitrator for disputes arising under the CBA, courts will not enforce arbitral awards that violate

the law or public policy that is well-defined and dominant.

10. The Hatch Act effectuates "the policy of the Congress that employees should be

encouraged to exercise fully, freely, and without the fear of penalty or reprisal, and to the extent

not expressly prohibited by law, their right to participate or to refrain from participating in the

political processes of the Nation." 5 U.S.C. § 7321.

11. The Hatch Act establishes the bounds of permissible political participation for federal

employees, including all employees of USPS. H.R. 20, Sec. 7, Hatch Act Reform Amendments

of 1993. Employees are permitted to "take an active part in political management or in political

campaigns." 5 U.S.C. § 7323.

12. However, employees may not use official authority to interfere with or affect the outcome

of an election, solicit, accept, or receive political contributions,[1] run as candidates in partisan

elections, or solicit or discourage the political participation of others doing business with their

agency. *See* 5 U.S.C. § 7323.

---

[1] There are some exceptions to this restriction that are not relevant here. 5 U.S.C. § 7323(a)(2).

13. Employees are also prohibited from engaging in political activity while on duty, in their workplaces, while wearing official uniforms or insignias, or while using a government vehicle.  5 U.S.C. § 7324.

14. The Office of Special Counsel, ("OSC"), is an agency of the federal government charged with the sole authority to investigate, prosecute, and render advisory opinions concerning violations of the Hatch Act.  *See* 5 U.S.C. §§ 1212-1216.

## FACTUAL BACKGROUND

15. In the Fall of 2016, OSC received a complaint submitted by Senator Ron Johnson, Chairman of the U.S. Senate Committee on Homeland Security and Governmental Affairs, on behalf of a constituent USPS employee, who alleged that USPS was incurring unnecessary overtime costs by releasing employees who were members of the National Association of Letter Carriers, ("NALC"), from their duties to participate in the AFL-CIO's Labor 2016 Program.

16. The Labor 2016 Program sought to elect Hillary Clinton and other pro-worker candidates across the country by engaging in political activities including door-to-door canvassing, phone banks, and other "get out the vote" efforts. Union members involved in these activities were paid by the Letter Carrier Political Fund, the NALC political action committee.

17. OSC investigated Senator Johnson's complaint, and issued a report of its investigation. OSC found that the NALC had provided Postal Service Headquarters Labor Relations executives with a list of carriers that the NALC had recruited and wanted released to participate in Labor 2016. The Labor Relations executives in turn disseminated the list to the relevant field offices, which released the designated carriers on "LWOP – Union Official" leave status.

18. OSC found that this practice was long-standing, going back several election cycles. It also found that this practice constituted a systemic violation of the Hatch Act because it created

an institutional bias in favor of the NALC's endorsed political candidates.  OSC concluded that

characterizing the NALC's political activity as union business conferred a special status on

carriers' leave requests and made USPS management far more likely to approve the requests than

other leave requests, including those for non-union political participation.

19. OSC therefore recommended that USPS take institutional corrective action including 1)

excluding political activity, as defined by the Hatch Act from the acceptable uses of union

official LWOP, and 2) taking a "hands off" approach to union political activity by ceasing at the

management level to require or suggest that union members be approved for union official

LWOP for political activities.

20. USPS presented a proposed Corrective Action Plan to OSC on August 31, 2017.  Under

its proposal, USPS would amend its Employee and Labor Relations Manual, ("ELM"), to

prohibit the use of union official LWOP for partisan political activities as defined by the Hatch

Act.  Specifically, USPS would amend Exhibit 514.4 of the ELM to state that "Partisan political

activity, as defined by the Hatch Act and its implementing regulations, is not an acceptable

reason for union business LWOP."

21. USPS also would revise Postal Service Form 3971, Request for or Notification of

Absence, to require employees to certify when requesting LWOP that the "request is not for the

purpose of engaging in partisan political activity as defined by the Hatch Act and its

implementing regulations."

22. On September 13, 2017, OSC notified USPS that it had accepted the Corrective Action

Plan and that the proposed changes to the ELM and Form 3971 were "required" to remediate the

systemic Hatch Act violations identified in OSC's report.

23. On October 26, 2017, USPS notified the APWU that it intended to implement the Corrective Action Plan to address the concerns identified by OSC. The following day, USPS sent the APWU copies of the revised ELM, the revised Form 3971, and the Corrective Action Plan.

24. On November 28, 2017, the APWU filed a dispute under Article 15, Step 4 of the CBA, which establishes the grievance-arbitration procedure, followed by an appeal to arbitration on April 10, 2018.  The APWU also filed on February 15, 2018, an appeal to arbitration under Article 19 of the CBA, which establishes procedures for modifications to materials directly related to wages, hours, or working conditions.  The cases, No. Q15C-4Q-C 17697250 and No. Q15C-4Q-C 18033533, were consolidated for hearing on May 2, 2018.  Two of the Postal Service's other unions – the NALC and National Postal Mail Handlers Union (NPMHU) – intervened in the arbitration.

25. The APWU complained that USPS's changes to the ELM and Form 3971 were improperly made unilaterally outside of the notice and consultation process established by the CBA. The Union also contended that the modifications violated a CBA rule barring midterm changes to the leave program.

26. USPS contended that it was not required to comply with the procedural requirements of the CBA because the changes it made to the ELM and Form 3971 were necessary to prevent it from taking actions "inconsistent with its obligations under law," specifically to avoid violating the Hatch Act.  The CBA contemplates that USPS has this obligation to follow the law independent of its other obligations under the CBA. Article 5.

27.  On August 6, 2018, the Arbitrator issued the Arbitral Award.  In the Award, the Arbitrator concluded that the dispute was arbitrable, and that the Postal Service had violated Article 5 of the CBA, prohibiting unilateral changes to wages, hours, and working conditions;

Article 10.2 of the CBA, prohibiting mid-contract term changes to leave regulations; and Article 19 of the CBA, prohibiting the changing of the ELM and Form 3971 without following CBA procedures.

28. The Arbitral Award requires the Postal Service to rescind the changes it made to the ELM and Form 3971 to comply with OSC's recommendation and prevent ongoing violation of the Hatch Act.

## COUNT 1

29. Plaintiff repeats and realleges Paragraphs 1 through 28 as if fully stated herein.

30. The Arbitral Award interferes with the USPS's ability to make changes to its practices that the OSC determined were necessary to remedy past violations of the Hatch Act and to avoid additional future violations.

31. The Arbitral Award should be vacated because it violates the well-defined and dominant public policies of the Hatch Act to ensure that federal employees are able to fully and freely participate in the political process without using their positions, influence, or access to improperly interfere with that process.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Postal Service prays that this Court issue a decision and order:

(1) Declaring that the Arbitral Award of August 6, 2018 violates public policy;

(2) Vacating the Arbitral Award of August 6, 2018; and

(3) Granting Plaintiff such further relief as the Court deems just and proper.

Dated: November 5, 2018                                  Respectfully submitted,

                                                         JOSEPH H. HUNT
                                                         Assistant Attorney General

7

*/s/ James J. Gilligan*
JAMES J. GILLIGAN
Special Litigation Counsel
JACQUELINE COLEMAN SNEAD
Assistant Branch Director
KERI L. BERMAN
Trial Attorney
United States Department of Justice
Civil Division,
Federal Programs Branch
1100 L Street, N.W., Room 11200
Washington, D.C. 20005
Telephone: (202) 514-3358
Facsimile: (202) 616-8470
Email: james.gilligan@usdoj.gov

*Attorneys for Plaintiff*