UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| U.S. POSTAL SERVICE,<br><br>*Plaintiff*,<br><br>v.<br><br>AMERICAN POSTAL WORKERS UNION, AFL-CIO,<br><br>*Defendant*. | Civil Action No. 1:18-cv-02553 (CJN) |

**MEMORANDUM OPINION**

The U.S. Postal Service brings this action against the American Postal Workers Union, AFL-CIO to vacate a labor arbitration award, asserting that the award violates the "well-defined and dominant public policies of the Hatch Act." Compl. ¶ 31, ECF No. 1. *See generally id.* The Union has filed a Motion to Dismiss arguing that service was untimely and that the suit omits necessary parties. *See generally* Def.'s Mot. to Dismiss, ECF No. 6. For the reasons below, the Court denies the Union's Motion.

**I.     Background**

In the fall before the 2016 presidential election, Senator Ron Johnson filed a complaint on behalf of one of his constituents, a Postal Service employee, with the Office of Special Counsel, an agency charged with investigating, prosecuting, and rendering advisory opinions concerning claimed violations of the Hatch Act of 1939, 5 U.S.C. §§ 7321–7326 (2018). Compl. ¶¶ 14–15. The employee-constituent alleged that the Postal Service was improperly releasing employees from work to participate in the AFL-CIO's efforts to help campaign for Hillary Clinton and other candidates across the country. *See id.* ¶¶ 15–16.

1

The Office of Special Counsel investigated Senator Johnson's complaint and identified Hatch Act violations. *Id.* ¶¶ 17–18. The Office found that the National Association of Letter Carriers ("NALC") had engaged in a long-standing practice of providing Postal Service labor relations executives with lists of letter carriers that were recruited by NALC to participate in its campaign efforts. *Id.* In turn, the labor relations executives shared those lists with field offices to have letter carriers released on "official union business leave without pay" to support campaign activities. *Id.* The Office determined that the practice was a "systemic violation of the Hatch Act because it created an institutional bias in favor of the NALC's endorsed political candidates" and recommended that the Postal Service take corrective action to prevent the Hatch Act violations by excluding political activity from acceptable uses of union-business leave without pay. *Id.* ¶¶ 18–19.

The Postal Service developed a corrective action plan and presented it to the Office in August 2017. *Id.* ¶ 20. Under the plan, the Postal Service would amend its Employee and Labor Relations Manual to prohibit the use of such leave for partisan political activities. *Id.* The Postal Service would also revise its leave request forms to require employees to certify that the "request is not for the purpose of engaging in partisan political activity as defined by the Hatch Act and its implementing regulations." *Id.* ¶ 21. The Office accepted the plan, noting that the proposed changes were "required" to remedy the Hatch Act violations identified in the Office's report. *Id.* ¶ 22.

In October 2017, about one year before the 2018 midterm elections, the Postal Service notified the Union that it intended to implement the corrective action plan. *See id.* ¶ 23. In November, the Union filed a dispute under the Parties' collective bargaining agreement and then initiated arbitration in both February and April 2018. *Id.* ¶¶ 24–25. The arbitrations were

consolidated for a hearing, and two other Postal Service unions, NALC and the National Postal Mail Handlers Union ("NPMHU"), intervened. *Id.*

The arbitrator issued an award on August 6, 2018, concluding that the dispute was arbitrable and that the Postal Service violated various provisions of the collective bargaining agreement. *Id.* ¶ 27. The arbitrator ordered the Postal Service to rescind the changes it made to comply with the Office of Special Counsel's report. *Id.* ¶ 28.

On November 5, 2018, the Postal Service filed this suit, and effected service on February 1, 2019. Affidavit of Service at 1, ECF No. 4. *See generally* Compl.

## II. Analysis

The Union moves to dismiss on two grounds: first, that the Postal Service did not timely serve this action, Mem. of Law in Supp. of Def.'s Mot. to Dismiss ("Def.'s Mem.") at 5–9, ECF No. 6-1; and second, that the Postal Service did not include all necessary parties—namely, the other union parties that participated in the arbitration, *id.* at 9.[1]

### A. Service

The Postal Service filed this suit under the Postal Reorganization Act ("PRA"), which gives this Court jurisdiction over "[s]uits for violation of contracts between the Postal Service and a labor organization representing Postal Service employees." 39 U.S.C. § 1208(b). The Parties agree that the PRA does not include an express limitations period for serving (or, for that matter, filing) an action to vacate an arbitration award. Def.'s Mem. at 5–6; Pl.'s Suppl. Br. Pursuant to the Court's Min. Order of Nov. 14, 2019 ("Pl.'s Suppl. Br.") at 5, ECF No. 14. The Parties also agree that neither the Labor-Management Relations Act of 1947 ("LMRA"), 29

---

[1] The Union originally moved to dismiss for a third reason—that the Postal Service *filed* this suit out of time, *e.g.*, Def.'s Mem. at 8—but it dropped that argument at the hearing on the Motion.

3

U.S.C. § 185(a), nor the federal common law arising out of section 301 of the LMRA, sets a period for service of such an action. Def.'s Mem. at 5–6; Pl.'s Suppl. Br. at 5 (citing *Cephas v. MVM, Inc.*, 520 F.3d 480, 484–85 (D.C. Cir. 2008)).[2] The Parties also agree that the Federal Arbitration Act's ninety-day period for service, 9 U.S.C. § 12 (2018), does not apply here.[3] And finally, they agree that courts in this District have applied the D.C. Revised Uniform Arbitration Act ("DCRUAA") when a party moves to vacate an arbitration award under section 301 of the LMRA and, more importantly, that this Court should apply the DCRUAA in this case. Def.'s Mem. at 5–6; Pl.'s Suppl. Br. at 5 (citing *Cephas*, 520 F.3d at 484–85); *see also Preeminent Protective Servs., Inc. v. SEIU*, 330 F. Supp. 3d 505, 510 n.3 (D.D.C. 2018) (applying the DCRUAA statute of limitations in determining timeliness of complaint).

---

[2] Section 1208(b) of the PRA is identical to section 301(a) of the LMRA. *U.S. Postal Serv. v. Nat'l Rural Letter Carriers' Ass'n*, 959 F.2d 283, 286 (D.C. Cir. 1992); *see also U.S. Postal Serv. v. Am. Postal Workers Union*, 553 F.3d 686, 689 (D.C. Cir. 2009). As a result, courts charged with determining the scope of § 1208(b) of the PRA rely on cases interpreting section 301(a) of the LMRA. *E.g.*, *Nat'l Rural Letter Carriers' Ass'n*, 959 F.2d at 286.

[3] Where it applies, the FAA requires that "a motion to vacate, modify, or correct an award *must be served* upon the adverse party . . . within three months after the award is filed or delivered." 9 U.S.C. § 12 (emphasis added). Congress, however, excluded certain types of employment contracts from the FAA. *Id.* § 1 ("[N]othing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."). Two courts of appeals have previously held that Postal Service workers fell within this exemption. *Bacashihua v. U.S. Postal Serv.*, 859 F.2d 402, 405 (6th Cir. 1988) ("If any class of workers is engaged in interstate commerce, it is postal workers."); *Am. Postal Workers Union v. U.S. Postal Serv.*, 823 F.2d 466, 473 (11th Cir. 1987) ("[I]f any workers are 'actually engaged in interstate commerce,' the instant postal workers are. They are responsible for dozens, if not hundreds, of items of mail moving in 'interstate commerce' on a daily basis."). In *Circuit City, Inc. v. Adams*, however, the Supreme Court "confine[d] the exemption to transportation workers" based on "their necessary role in the free flow of goods." 532 U.S. 105, 109, 121 (2001). No court in this circuit has since addressed whether Postal Service workers fall within the FAA's exemption, but the Parties agree that they do and that Section 12 of the FAA is therefore inapplicable. Def.'s Mem. at 6; Pl.'s Suppl. Br. at 2.

4

The Parties' common ground ends there. The Union argues that "D.C. law require[s] the Postal Service to have served its Complaint . . . within the same ninety days it had for filing the Complaint with the Court." Def.'s Reply to Pl.'s Opp'n to Def.'s Mot. to Dismiss at 2, ECF No. 10. A ninety-day service deadline applies under D.C. law, in the Union's view, because the DCRUAA states that "[a] motion [to vacate an award] shall be filed within 90 days after the movant receives notice of the award." D.C. Code § 16-4423(c) (2020). Although this provision speaks only to filing, and not service, the Union contends that the DCRUAA's use of the word "motion" and "filed" triggers application of Federal Rule of Civil Procedure 5, and that because this Complaint should properly be construed as a motion, "service of a motion must be made before or at the same time as the motion is filed." Def.'s Mem. at 6 (citing Fed. R. Civ. P. 5(d)(1)(A), (B)).[4]

For its part, the Postal Service argues that the relevant provision of the DCRUAA on vacating arbitration awards speaks only to *filing* motions. D.C. Code § 16-4423(c) (2019) ("A motion [to vacate an award] *shall be filed* within 90 days after the movant receives notice of the award . . . ." (emphasis added)). Moreover, the Postal Service contends, the DCRUAA requires that "[u]nless a civil action involving the agreement to arbitrate is pending, notice of an initial motion to the court under this chapter shall be served *in the manner provided by law for the service of a summons in a civil action*." *Id.* § 16-4405(b) (emphasis added). In the Postal Service's view, the applicable "law for the service of a summons in a civil action" is Federal

---

[4] The Union also argues that a ninety-day deadline applies under federal law because court looks to the FAA for guidance when fashioning federal common law in the arbitration context. Def.'s Mem. at 6–7. But the FAA does not apply here, *see supra* p. 4 and note 3, and when fashioning federal common law in the PRA-LMRA framework, other courts have not adopted the FAA's service requirements. *See, e.g.*, *Am. Postal Workers Union*, 823 F.2d at 476–77. This Court similarly declines to do so.

5

Rule of Civil Procedure 4(m), which permits the Postal Service to serve the Union within ninety days of filing the Complaint. Pl.'s Opp'n to Def.'s Mot. to Dismiss at 6, ECF No. 8.

The Court agrees with the Postal Service. The DCRUAA provides a deadline to *file* an action to vacate an arbitration award but not a deadline to *serve* the opposing party, *see* D.C. Code. § 16-4423(c), and further provides that such actions "shall be served in the manner provided by the law for the service of a summons in a civil action." *Id.* § 16-4405(b). The Postal Service filed this action in federal court and thus, pursuant to the DCRUAA, the service provisions of the Federal Rules of Civil Procedure apply.[5]

The Federal Rules allow ninety days for service. Fed. R. Civ. P. 4(m). The Postal Service filed its Complaint on November 5, 2018, making February 4, 2019, the deadline for service. *See* Compl.; *see also* Fed. R. Civ. P. 6(a) (computing time). Service occurred on February 1, 2019, Affidavit of Service at 1, and was therefore timely.[6]

---

[5] The tortuousness of this analysis is not lost on the Court. Both Parties approach the issue here by jumping from federal law—the PRA, then the LMRA—to state law—the DCRUAA—and then back to federal law—the Federal Rules of Civil Procedure. But the PRA, unlike the LMRA, expressly adopts federal procedural law:

> [T]he provisions of title 28 relating to *service of process*, venue, and *limitations of time for bringing action in suits* in which the United States, its officers, or employees are parties, and *the rules of procedure* adopted under title 28 for suits in which the United States, its officers, or employees are parties, shall apply in like manner to suits in which the Postal Service, its officers, or employees are parties.

39 U.S.C. § 409(b) (emphasis added). The PRA may thus make the service provisions of the Federal Rules directly applicable here, rather than through a federal-state-then federal law analysis. But neither Party presses this argument, and the Court declines to adopt it *sua sponte*.

[6] The Union also challenges the Postal Service's Complaint because it believes that the Postal Service improperly initiated this suit, claiming that the Postal Service should have filed the initial petition in the form of a motion rather than a Complaint. Def.'s Mem. at 4 & 4 n.1. This Court has jurisdiction over "[s]uits for violation of contracts between the Postal Service and a labor organization representing Postal Service employees." 39 U.S.C. § 1208(b). Labeling the initial

### B. Joining Necessary Parties

The Union also moves to dismiss under Federal Rule of Civil Procedure 19 because it contends that the Postal Service did not include necessary parties NALC and NPMHU. Def.'s Mem. at 9. "A decision under Rule 19 '*not* to decide' a case otherwise properly before the court is a power to be exercised only '[i]n rare instances.'" *Nanko Shipping, USA v. Alcoa, Inc.*, 850 F.3d 461, 465 (D.C. Cir. 2017) (quoting *Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund*, 582 F.3d 30, 42 (1st Cir. 2009)). And "[t]he burden is on the defendant seeking dismissal for failure to name an absent person to show 'the nature of the interest possessed by an absent party and that the protection of that interest will be impaired by the absence.'" *16th & K Hotel, LP v. Commonwealth Land Title Ins. Co.*, 276 F.R.D. 8, 12 (D.D.C. 2011) (quoting *Citadel Inv. Grp. v. Citadel Capital Co.*, 699 F. Supp. 2d 303, 317 (D.D.C. 2010) (other citations omitted).

Here, the Union does not carry its burden. The Union argues merely that NALC and NPMHU are necessary parties because they "intervened in the arbitration, making them full parties to the proceeding and bound by the Award" and because "[v]acating the Award will directly affect employees represented by NALC and the NPMHU." Def.'s Mem. at 9. The Union provides no additional information to support this assertion, and without more, this cursory argument fails to meet the Union's burden under Rule 19. *E.g.*, *16th & K Hotel*, 276 F.R.D. at 12 ("The moving party may carry its burden by providing affidavits of persons having

---

pleading a "complaint" rather than a "motion" does not make the current controversy less of a "suit" within the meaning of § 1208(b). As a result, commencing this litigation with a complaint rather than a motion is merely an issue of form—not a basis for dismissing the Postal Service's Complaint.

knowledge of these interests as well as other relevant extra-pleading evidence." (internal quotation marks omitted) (citation omitted)).

### III. Conclusion

For the foregoing reasons, the Union's Motion to Dismiss is **DENIED**. An Order will be entered contemporaneously with this Memorandum Opinion.

DATE: February 28, 2020

_____
CARL J. NICHOLS
United States District Judge